IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

FURLIN DUKE JONES                                                              PLAINTIFF

      v.                                     Civil No. 13-2142

SHERIFF RON BROWN; and
NURSE LAURIE WALLS                                                       DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff

proceeds *pro se* and *in forma pauperis.*

The Plaintiff is currently incarcerated in the Arkansas Department of Correction (ADC),

Randall L. Williams Correctional Facility, located in Pine Bluff, Arkansas. The events that are

the subject of this case occurred while Plaintiff was incarcerated in the Crawford County

Detention Center (CCDC) in Van Buren, Arkansas. Plaintiff maintains he was denied adequate

medical care and was subjected to unconstitutional conditions of confinement.

Defendants have each filed a summary judgment motion (Docs. 21-23 & 24-26).

Plaintiff has filed a response to the motions (Doc. 33). The motions are now ready for decision.

**1. Background**

Plaintiff was incarcerated in the CCDC from November 28, 2012, to January 2013 and

again from April of 2013 to September of 2013. *Plaintiff's Response* (Doc. 33)(hereinafter

*Resp.*) at ¶ 1. He states he was incarcerated "waiting on new charges." *Id.* at ¶ 2.

-1-

According to the Plaintiff, there was mold in Pod 1 all around the air vents and on the wall by the shower.[1]  *Resp.* at ¶ 3.  He indicates the area was cleaned only once during his incarceration at the CCDC.  *Id.*  Plaintiff believes it was the County's responsibility to clean the area.  *Id.*

Plaintiff was asked whether he ever attempted to clean the area.  He responded that he was never asked.  *Resp.* at ¶ 3.  He indicates he complained about the presence of the mold to detention center officials.  *Id.*  In response, Lieutenant Cupp stated it was not black mold.  *Id.*  Because of the mold, Plaintiff states he experienced shortness of breath and difficulty breathing.  *Id.*

Plaintiff never communicated with Sheriff Brown about the mold problem.  *Resp.* at ¶ 4(A).  Plaintiff maintains the Sheriff is liable because he "is over the county jail and is to over see the welfare of inmates well being and health."  *Id.*

The day to day operations of the jail are entrusted to the jail administrator and the assistant jail administrator.  *Resp.* at ¶ 4(B).  The Sheriff had little involvement in the day to day operations of the jail.  *Brown Exhibit* A.  The Sheriff does not review inmate grievances unless they are addressed specifically to him.  *Id.*

The Department of Health has inspected the detention center twice in the last two years.  *Brown's Ex.* A; *Resp.* at ¶ 5(A)(without knowledge to agree or disagree).   Sheriff Brown contacted the Department of Health about a year ago because there was a lawsuit with similar allegations about the presence of mold.  *Brown's Ex.* A.  After Bobby D. Williams, an inmate,

---

[1] Plaintiff has submitted the unsworn statement of an inmate who cleaned around the shower and air vents.  Unfortunately, the Court cannot consider this statement.  Unsworn statements are hearsay and cannot be considered in connection with a summary judgment motion.  *See Mays v. Rhodes*, 244 F.3d 644, 648 (8th Cir. 2001).

AO72A
(Rev. 8/82)

made similar allegations, Sheriff Brown again contacted the Department of Health and had them inspect the jail again.  *Id.*

The Department of Health found no evidence of mold growth in the jail.  *Brown's Ex. B.*  The most recent inspection occurred on June 24, 2013.  *Id.*

Plaintiff indicated on his medical intake form that he had been exposed to tuberculosis (TB) at the Malvern Technical Violators Program and were taking medication.  *Resp.* at ¶ 8(A). Plaintiff submitted several grievances in April and May of 2013 stating he was not getting his TB medication.  *Id.* at ¶ 8(B).  Plaintiff had been incarcerated at the Malvern Technical Violator Program and was on medication for latent TB.  *Id.* at ¶ 8(C).  Latent TB is non-symptomatic and is not contagious.  *Walls' Ex.* A; *Resp.* at ¶ 8(D)(Without knowledge to agree or disagree).

Plaintiff's medication was brought to the detention center and he had sufficient medication to last three weeks.  *Resp.* at ¶ 8(E).  Plaintiff received the medication until it was gone.  *Id.* at ¶ 8(G).  On April 12th, before Plaintiff's medication ran out, Nurse Walls requested a copy of Plaintiff's medical records from the Malvern facility.  *Id.* at ¶ 8(F).

The Arkansas Department of Health, through the local Crawford County Department of Health, handles TB medication for inmates in the CCDC.  *Walls' Ex.* A; *Resp.* at ¶ 8(H)(without knowledge to agree or disagree).  On April 26th, Nurse Walls was told by Teddie of the Crawford County Department of Health that she was working on Plaintiff's case and would be getting orders from the appropriate physician at the Arkansas Department of Health.  *Resp.* at ¶ 8(I).  Teddie indicated that once the orders were obtained she would restart Plaintiff on the regimen.  *Id.* at ¶ 8(J).

On April 26th, Nurse Walls explained to Plaintiff why he was out of medication and the difference between latent and active TB. *Resp.* at ¶ 8(K).  On April 29, 2013, Plaintiff submitted a grievance asking about his TB condition and whether the jail had received his medication. *Id.* at ¶ 9.  Nurse Walls responded in writing the next day stating that she had already talked to the Plaintiff about his condition and that the medication would be reinstated after the Crawford County Department of Health received orders to do so. *Id.* at ¶ 10(A).  She explained that the Crawford County Health Unit was in charge of his case and would be coming to see him and explain about his medication. *Id.* at ¶ 10(B).  She also informed the Plaintiff that she had not received his medical records from the Malvern Technical Violator Program. *Id.* at ¶ 10(C). While Nurse Walls states that she provided Plaintiff educational materials regarding latent TB, Plaintiff asserts he was not given proper information. *Id.* at ¶ 10(D).

On April 30th, Nurse Walls made a second request for Plaintiff's medical records. *Walls' Exs.* A & F.  Plaintiff submitted a request on May 1st asking if his TB medication was in. *Resp.* at ¶ 11(A).  Nurse Walls again explained that the Crawford County Department of Health  was in charge of the Plaintiff's TB case and would be see him and bring his medication. *Id.* at ¶ 11(B).  Nurse Walls explained that the Plaintiff did not have active TB disease. *Id.* at ¶ 11(C). Rather, he had latent TB which is not contagious and did not cause him to have any TB symptoms.

*Id.* at ¶ 11(D).

Plaintiff submitted a grievance on May 2nd asking for an explanation of his TB. *Resp.* at ¶ 12(A).  Nurse Walls explained to Plaintiff the difference between TB disease and TB infection. *Id.* at ¶ 12(B).

-4-

On May 9th, Plaintiff submitted a request asking when someone from the Health Department would be coming to see him. *Resp.* at ¶ 13(A). He indicated he was concerned about his health. *Id.* Nurse Walls responded stating that she was keeping in touch with the Health Department and had contacted the TB nurse again. *Id.* at ¶ 13(B). She stated she was waiting to hear back from the TB nurse and would keep Plaintiff posted of any new information. *Id.* at ¶ 13(C).

Sheriff Brown was not involved in Plaintiff's medical care. *Resp.* at ¶ 13(D). Plaintiff never communicated with Sheriff Brown about his need for TB medication. *Id.* at ¶ 13(E). Plaintiff indicates he does not believe Sheriff Brown is liable for two and one-half month wait for medication. *Id.*

As a result of not having the TB medication, Plaintiff indicated he has difficulty in breathing and shortness of breath. *Resp.* at ¶ 13(F). He did not see a doctor. *Id.* He was started on TB medication again at the CCDC in approximately the middle of July. *Id.* at ¶ 13(G).

Plaintiff signed the complaint in this case on May 9, 2014. Doc. 1 at pg. 6. On May 10th, Teddie from the Crawford County Health Department advised Nurse Walls' that she would be coming to see the Plaintiff on May 14th. *Resp.* at ¶ 14(A). Teddie said the Plaintiff would need sputum collected and tested before a physician would prescribe additional TB medication. *Id.* at ¶ 14(B). On May 14th, Teddie visited the Plaintiff and gave him instructions for obtaining three sputum samples. *Id.* at ¶ 14(C).

On May 17th, the sputum samples were returned and taken to the Crawford County Department of Health. *Resp.* at ¶ 14(D). On May 31st, Nurse Walls contacted Teddie to request a status report. *Walls' Ex.* A. Nurse Walls was informed that the initial results on the sputum

-5-

report were negative but they had to wait on the culture results which could take up to 6 weeks. *Resp.* at ¶ 14(F).  On June 4th, Nurse Walls visited with the Plaintiff and told him about the test results including the fact that the culture results would not be ready for up to six weeks.  *Id.* at ¶ 14(G).

On June 25th, Nurse Walls again contacted Teddie to get a status update.  *Walls' Ex.* A. She was told the culture results had not been received.  *Id.*  On July 2nd, Plaintiff was seen by Nurse Walls.  *Resp.* at ¶ 14(I).  Plaintiff asked for an update on the TB results and complained of a cough and kidney pain.  *Id.*  Nurse Walls examined the Plaintiff but noted no wheezing and no active distress.  *Id.* at ¶ 14(J).  According to Nurse Walls, she asked if the Plaintiff wanted to be seen by a physician and he declined.  *Walls' Ex.* A.  Plaintiff, however, states he never told her that he did not want to see the doctor.  *Resp.* at ¶ 14(K).

Nurse Walls obtained an order for an x-ray of Plaintiff's lungs.  *Resp.* at ¶ 14(L).  The x-ray was taken within a few days.  *Id.* at ¶ 14(M).  The x-ray was negative indicating Plaintiff had no lung infection from TB or any other respiratory disease.  *Walls' Ex.* A.

On July 18th, Nurse Walls again contacted Teddie to check on the status of the Plaintiff's case.  *Walls' Ex.* A; *Resp.* at ¶ 14(0)(without knowledge to agree or disagree).  Teddie indicated Plaintiff was good to start on medication.  *Id.*  According to Nurse Walls, Plaintiff was taken to the Health Department the following day and started back on medication.  *Walls' Ex.* A; *Resp.* at ¶ 14(Q).  Plaintiff agrees that he was put back on medication but does not think it was the following day.  *Resp.* at ¶ 14(Q).  Plaintiff was given medication to take back to the CCDC.  *Id.* at ¶ 14(R).

-6-

On August 15th, Nurse Walls contacted Teddie and requested a refill of the medication and was told it would be sent. *Walls' E.* A; *Resp.* at ¶ 14(S)(without knowledge to agree or disagree).  On September 10th, Plaintiff was transferred to another detention facility and he was given his TB medication. *Id.* at ¶ 14(T).  Nurse Walls advised the Health Department of the transfer and indicated Plaintiff would need more medication by September 13th. *Walls' Ex.* A.

Plaintiff was asked to detail how he believed Nurse Walls exhibited deliberate indifference to his serious medical needs. *Resp.* at ¶ 15.  He replied: "Did not give me my medicine in a timely manner as needed and prescribed do to I told her from the day I ran out of medication that they were needing to get me more since she could've called omega that day." *Id.*

Plaintiff also asserts a claim based on a single incident of  his legal mail being opened outside his presence. *Resp.* at ¶ 16(A). Ms. Marion explained to the Plaintiff that the letter was marked return to sender. *Id.* at ¶ 16(B).  Without seeing who it was addressed to, Ms. Marion had a deputy open it because it felt like there was something hard in the envelope. *Id.* at ¶ 16(C).

After it was opened, Ms. Marion noticed it was a legal document. *Resp.* at ¶ 16(D).  The envelope was taped up and given to the Plaintiff. *Id.* at ¶ 16(E).  Ms. Marion explained to the Plaintiff what happened. *Id.* at ¶ 16(F).  Plaintiff states he does not know if she read the document or made copies of it. *Resp.* at pgs. 34-35.

Plaintiff does not know if Sheriff Brown was advised of the situation. *Resp.* at ¶ 16(G). Nurse Walls had no involvement with, and no knowledge about, the opening of the legal letter. *Id.* at ¶ 16(H).

AO72A
(Rev. 8/82)

Plaintiff was asked if a custom or policy of Crawford County was the moving force behind the violation of his constitutional rights.  He responded affirmatively.  *Resp.* at ¶ 22.  He was then asked to describe in detail the custom or policy and how it operated to deprive him of his federal constitutional rights.  He said:

> I was not given proper medical care in a timely fashion as needed.  Meds were denied reordering was postponed without my pres[e]nce which breaks protocol also had me living in back mold where it was growing an way out of the vents and on the wall by the shower in cell one.

*Id.* at ¶ 22.

## 2.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or

-8-

suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### **3.  Discussion**

As noted above, the Defendants filed separate motions for summary judgment.

**(A).  Sheriff Brown's Summary Judgment Motion** (Docs. 21-23)

Sheriff Brown maintains there is simply no basis on which he may be held liable.   With respect to the mold issue, Sheriff Brown states he had the facility inspected twice within two years following complaints made by other inmates and no evidence of mold was found.

With respect to the alleged denial of medical care, Sheriff Brown asserts he was not involved in Plaintiff's medical treatment.   Similarly, Sheriff Brown denies having any involvement with the opening of a single legal letter outside of Plaintiff's presence.

**(1).  Black Mold**

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

In this circuit, the deliberate indifference standard of the Eighth Amendment is applied to all conditions of confinement claims whether the claims are brought by a pretrial detainee or a convicted prisoner.   *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to all claims that prison officials failed to provide adequate food, clothing, shelter, etc.); *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir.

AO72A
(Rev. 8/82)

1994)("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same.").

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.   The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).  Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, utilities, and safety.

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety."  Id.  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

The undisputed facts show that Sheriff Brown had the CCDC inspected twice by the Arkansas Department of Health in response to inmates' complaints about the presence of mold in the facility.  *Brown's Ex.* A.  One such inspection occurred on June 24, 2013, during

-10-

Plaintiff's incarcerate that the CCDC. *Brown's Ex.* B. No mold growth was observed in the facility. *Id.*

Here, there is no indication that Sheriff Brown was even aware of Plaintiff's complaints regarding mold. Certainly, Sheriff Brown's conduct did not "objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. " *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

"The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Id.* However, even assuming he was aware of Plaintiff's complaints, there is no basis for him to be held liable. Having the Health Department inspect for mold certainly belies the existence of any deliberate indifference on Sheriff Brown's part. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Sheriff Brown is entitled to summary judgment in his favor on the mold claim.

### (2).  Medical Care

Plaintiff concedes that Sheriff Brown was not involved in his medical care. *Resp.* at ¶ 13(D). Sheriff Brown is therefore entitled to summary judgment on this claim.

### (3).  Legal Mail

There is no suggestion that Sheriff Brown was involved anyway with an article of legal mail being opened outside of Plaintiff's presence. Liability under § 1983 requires some personal

-11-

or direct involvement in the alleged unconstitutional action.  *See e.g., Ripson v. Alles*, 21 F.3d 805, 808-09 (8th Cir. 1994).  A supervisory employee may not be held liable merely because he has general supervisory authority over a department or a given person.  *See e.g., Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).  "Supervisors can, however, incur liability for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices."  *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012)(internal quotation marks and citation omitted).

In this case, nothing submitted to the Court indicates that Sheriff Brown was involved in anyway with the handling of legal mail in general or with the opening of this one piece of legal mail in particular.  Sheriff Brown is therefore entitled to summary judgment in his favor on this claim.

**(B).  Nurse Walls' Summary Judgment Motion** (Docs. 24-26)

"Under the Eighth Amendment's proscription against cruel and unusual punishments, prison officials must provide medical care to inmates."  *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008)(internal quotation marks and citation omitted).  "A prison's medical staff violates the Eighth Amendment if they commit acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs."  *Meuir v. Green County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007)(internal quotation marks and citation omitted).

To establish a prima facie case, Plaintiff must demonstrate that:  (1) he suffered from an objectively serious medical need; and (2) Defendants actually knew of, but deliberately disregarded, that need.  *Id.*

-12-

The decision of what medication should be given, or tests run, is ordinarily left to the judgment of medical personnel.  *See e.g., Estelle v. Gamble*, 429 U.S. 97, 107 (1976)(where medical personnel saw inmate 17 times in 3 months and treated back strain with bed rest, muscle relaxants, and pain relievers, their failure to x-ray inmate's back or implement other diagnostic techniques or treatment was not deliberate indifference).   With respect to the TB medication, it is noted that Nurse Walls spoke to Plaintiff on a number of occasions explaining that he had latent TB.  Nurse Walls also kept in touch with the TB Nurse at the Department of Health. When the medication was received, it was dispensed.  When Plaintiff was transferred to another detention facility, Nurse Walls made sure that they knew Plaintiff had latent TB and sent his TB medication with him.  There is no genuine issue of material fact as to whether Nurse Walls exhibited deliberate indifference to Plaintiff's serious medical needs.

Furthermore, "[a] prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011)(internal quotation marks and citation omitted).   In this case,  Plaintiff has presented no evidence that any delay attributable to Nurse Walls adversely impacted his prognosis.  Nurse Walls is entitled to summary judgment in her favor.

### 4.  Conclusion

For the reasons stated, I find the motions for summary judgment filed by Sheriff Brown (Docs. 21-23) and Nurse Walls (Docs. 24-26) should be granted.  The case should be dismissed with prejudice.

AO72A
(Rev. 8/82)

The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 6th day of August 2014.

/s/ *J. Marschewski*

 HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-14-